1
2
3
4              UNITED STATES DISTRICT COURT

5          FOR THE NORTHERN DISTRICT OF CALIFORNIA

6                     OAKLAND DIVISION

7

8   | WILLARD A. SHARRETTE, DAVID | Case No:  C 13-2783 SBA |
GOLDMAN, and ESTA GOLDMAN,
Individually and on Behalf of All Others **ORDER**
9   Similarly Situated,

10                 Plaintiffs,

11            vs.

12  CREDIT SUISSE INTERNATIONAL, a
foreign company, CREDIT SUISSE
13  SECURITIES (USA) LLC, a Delaware
limited liability company, and DOES 1-100,
14
                   Defendants.
15

16

17        Plaintiffs Willard Sharrette, David Goldman, and Esta Goldman (collectively,

18  "Plaintiffs") bring the instant federal securities law putative class action against Defendants

19  Credit Suisse International and Credit Suisse Securities (USA) LLC (collectively, "Credit

20  Suisse") on behalf of themselves and all other persons or entities who purchased or

21  otherwise acquired common stock of Energy Conversion Devices, Inc. ("ECD") between

22  June 18, 2008 and February 14, 2012.  The parties are presently before the Court on Credit

23  Suisse's motion to dismiss the consolidated amended complaint ("CAC").  Plaintiffs

24  oppose the motion.  For the reasons that follow, the Court ORDERS the parties to show

25  cause why this case should not be transferred to the Southern District of New York under

26  28 U.S.C. § 1404(a).  Because it is unclear at this juncture whether this case should be

27  transferred, the Court will not address Credit Suisse's motion to dismiss.  In the event the

28  case is not transferred, the Court will resolve Credit Suisse's motion.

1

I.      BACKGROUND

2      ECD was a manufacturer of solar power technology; specifically, ECD

3  manufactured photovoltaic laminates that generated renewable energy by converting

4  sunlight into electricity.  CAC ¶ 22, Dkt. 48.  Plaintiffs are former shareholders of ECD.

5  Id. ¶¶ 10-12.  Plaintiff Willard Sharrette is a resident of Michigan, while Plaintiffs David

6  Goldman and Esta Goldman are residents of New York.  Id.  Defendant Credit Suisse

7  International is an unlimited liability company domiciled in the United Kingdom, doing

8  business in the United States.  Id. ¶ 13.  Defendant Credit Suisse Securities (USA) LLC is a

9  Delaware company headquartered in New York, New York.  Id. ¶ 14.

10      The instant action arises out of an allegedly fraudulent scheme perpetrated by Credit

11  Suisse and a group of unnamed "predatory hedge funds" to mislead investors and

12  artificially drive down the price of ECD common stock, causing ECD's investors to suffer

13  "astronomical" losses.  CAC ¶ 2.  According to Plaintiffs, Credit Suisse was the architect of

14  and key participant in the fraudulent scheme, which arose out of a combined offering of

15  convertible notes[1] and ECD common stock underwritten by Credit Suisse.  CAC ¶¶ 3, 5.

16  As part of the common stock offering, ECD created a pool of shares that were made

17  available to Credit Suisse to loan pursuant to a Share Lending Agreement to facilitate

18  transactions by which investors in the convertible notes would hedge their respective

19  investments through short sales of ECD's stock.  CAC ¶¶ 3, 4, 42.

20      Plaintiffs allege that the offering documents falsely represented that the purpose of

21  the common stock offering, and the attendant Share Lending Agreement, was to promote

22  the sale of the convertible notes by assisting investors in "hedging"[2] their investment in

23

24      [1] A convertible note is a type of hybrid security.  Like bonds, convertible notes pay
    interest and have a maturity date.  CAC ¶ 3.  At the same time, like stock, the price of
    convertible notes is more sensitive to the earnings prospects of the issuer than an ordinary

25  bond because each note can be converted into equity.  Id.

26      [2] A "hedge" is an offsetting investment that limits the downside risk of a principal
    investment.  CAC ¶ 4.  The use of the term "hedge" in the context of convertible notes

27  specifically refers to a market neutral investment strategy whereby an investor buys
    convertible notes and limits the downside risk in the price of the notes by "shorting" the

28  common stock of the company.  Id.

1  these securities.  CAC ¶ 4.  According to Plaintiffs, the purpose of the simultaneous

2  offerings was not to permit investors in the convertible notes to engage in market neutral

3  hedging, but rather to allow the "predatory hedge funds" that purchased the convertible

4  notes to make huge, coordinated, short sales of ECD's stock in order to decimate the price

5  of the stock and reap huge profits.  CAC ¶ 5.

6      Plaintiffs assert that the unrestrained short selling orchestrated by Credit Suisse and

7  the hedge funds drove the price of ECD common stock down from approximately $72.00

8  per share on June 18, 2008 to less than $1.00 per share in February 2012, causing massive

9  losses to investors.  CAC ¶ 9.  Plaintiffs further assert that Credit Suisse and its hedge fund

10  clients reaped enormous profits from the fraudulent scheme.  Id.  Specifically, Plaintiffs

11  allege that Credit Suisse benefited in two ways from the fraudulent scheme:  (1) Credit

12  Suisse was paid a share of the $8.25 million commission for underwriting the convertible

13  note offering; and (2) Credit Suisse was able to promote itself to hedge funds by helping the

14  hedge funds obtain exorbitant profits through short sales of ECD's stock.  Id. ¶ 16.

15  **II.    DISCUSSION**

16      Plaintiffs allege that Credit Suisse's fraudulent scheme violated §§ 9 and 10(b) of

17  the Securities and Exchange Act of 1934 ("Exchange Act") as well as Rule 10(b)-5

18  promulgated under the Exchange Act.  According to Plaintiffs, venue is proper in this

19  district pursuant to § 27 of the Exchange Act and 28 U.S.C. § 1391(b).  CAC ¶ 20.

20      As an initial matter, because Credit Suisse has waived the issue of whether venue is

21  proper in this district by failing to raise the defense of improper venue in its response to the

22  CAC,[3] the Court will not address the issue of whether venue is proper in this district under

23

24

25
_____

26      [3] Under Federal Rule of Civil Procedure 12, a defendant must raise certain defenses
in its initial response to the complaint or risk waiver of those defenses.  See Fed.R.Civ.P.
12(b), 12(g), 12(h); Misch on Behalf of Estate of Misch v. Zee Enterprises, Inc., 879 F.2d
27  628, 631 (9th Cir. 1989) ("Although a party may assert the defense of improper venue
either as part of his responsive pleading or by separate motion, . . . he waives the defense if
28  not timely and properly raised.").

§ 27 of the Exchange Act[4] and/or 28 U.S.C. § 1391(b).[5]  However, even assuming that venue is proper in this district, the Court may sua sponte transfer this case to another district under § 1404(a), so long as the parties are first given the opportunity to present their views on the issue.  Costlow v. Weeks, 790 F.2d 1486, 1488 (9th Cir. 1986) (citing Starnes v. McGuire, 512 F.2d 918, 934 (D.C. Cir. 1974) (where neither party has requested transfer, the district court, should, at a minimum, issue an order to show cause why the case should not be transferred)); see Minichino v. Sutidze, 2012 WL 621459, at *2 (N.D. Cal. 2012) (Armstrong, J) ("The Court may sua sponte transfer an action under § 1404(a).").

Section 1404(a) provides:  "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district . . . where it might have been brought or to any district . . . to which all parties have consented." 28 U.S.C. § 1404(a).  Given the residence of the parties and the location of the operative events giving rise to this action, the Northern District of California appears to be the wrong venue for this case.  None of the parties reside in California, while two of the Plaintiffs reside in New York and one of the Defendants is headquartered in New York City.  Further, Plaintiffs do not allege that any of the relevant events occurred in California.[6]  Rather, the

---

[4] Venue for a civil action under the Exchange Act is proper in any district where:  (1) any act or transaction constituting the violation occurred; or (2) where the defendant is found, inhabits, or transacts any business.  See Vanleeuwen v. Keyuan Petrochemicals, Inc., 2013 WL 4517242, at *6 (C.D. Cal. 2013).

[5] In civil actions brought in district courts of the United States, venue is proper in the following districts: (1) if all Defendants reside in the same state, a district where any defendant resides; (2) a district in which a substantial part of the events or omissions on which the claim is based occurred; or (3) if there is no district in which the action may otherwise be brought, the district in which any defendant may be found.  28 U.S.C. § 1391(b).

[6] California does not appear to have any particular interest or connection to this case. While the original named Plaintiff resides in California, the Plaintiffs replaced him as the lead Plaintiffs in this action.  To the extent that the original plaintiff's choice of forum is relevant to the transfer analysis, the Court notes that a plaintiff's choice of forum is given minimal deference when the operative events have not occurred in the forum and the subject matter of the litigation is not substantially connected to the forum.  See Pac. Car & Foundry Co. v. Pence, 403 F.2d 949, 954 (9th Cir. 1968); Metz v. U.S. Life Ins. Co. in City of N.Y., 674 F.Supp.2d 1141, 1146 (C.D. Cal. 2009).  Further, a plaintiff's choice of forum is accorded less deference when, as here, the action is brought as a class action on behalf of a representative class.  See Lou v. Belzberg, 834 F.2d 730, 739 (9th Cir. 1987).

allegations in the CAC suggest that all, or at least a substantial part, of the operative events providing the basis for this action occurred in New York.  As such, New York appears to be the appropriate venue for this case.  Accordingly, the Court orders the parties to show cause why this case should not be transferred to the Southern District of New York under § 1404(a).

## III.    CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED THAT:

1.    The parties shall show cause in writing why this case should not be transferred to the Southern District of New York under § 1404(a).  The parties shall file briefs, not to exceed ten (10) pages, by no later than seven (7) days from the date this Order is filed.  Alternatively, the parties may file a stipulation requesting that this case be transferred to the Southern District of New York under § 1404(a).

2.    In the event that this case is not transferred, the Court will resolve Credit Suisse's motion to dismiss.

IT IS SO ORDERED.

Dated:  October 14, 2014

SAUNDRA BROWN ARMSTRONG
United States District Judge